Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Charlene Cheli*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CHARLENE CHELI, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>TNL 202 LLC, a New Jersey Limited Liability Company,<br><br>&<br><br>OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company,<br><br>&<br><br>CARRABBA'S ITALIAN GRILL, LLC, a Florida Limited Liability Company,<br><br>Defendants. | Case No. 1:26-cv-00637<br><br>**COMPLAINT** |

**Introduction**

Plaintiff, CHARLENE CHELI, an individual, on her own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendants, TNL 202 LLC, a New Jersey Limited Liability Company, OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company, and CARRABBA'S ITALIAN GRILL, LLC, a Florida

1

Limited Liability Company ("Defendants") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris. Ms. Cheli resides at 1380 Washington Avenue, Vineland, NJ 08361.

2. Defendant, TNL 202 LLC, owns a parcel of land which encompasses places of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

3. Defendant, OUTBACK STEAKHOUSE OF FLORIDA, LLC, operates a place of public accommodation, known as Outback Steakhouse ("Outback") alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

4. Defendant, CARRABBA'S ITALIAN GRILL, LLC, operates a place of public accommodation, known as Carrabba's Italian Grill ("Carrabba's") alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

5. Defendants' property/places of public accommodation – which encompasses both Outback and Carrabba's – are respectively located at 4600 & 4650 NJ 42, Turnersville, NJ 08012 (the "Property").

6. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

7. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original

jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

8. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

9. The Defendants own, lease, lease to, and/or operate a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendants are thus required to comply with the obligations of the ADA.[2]

10. Plaintiff, CHARLENE CHELI, is an individual with disabilities – as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of her wheelchair to ambulate.

### Factual Background

11. Ms. Cheli is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to the elimination of accessibility discrimination so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

12. Ms. Cheli is a member of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

13. Ms. Cheli encounters architectural barriers at many of the places that she visits. Seemingly trivial architectural features such as parking lots, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be frustrating and dangerous to those in wheelchairs.

14. The barriers to access that Ms. Cheli experiences at differing places of public accommodation are often similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. She has become frustrated and disheartened by the repetitiveness of the complaints she has been forced to make at most of the places she visits; often to no avail. Thus, she now finds her redress through the ADA; as Congress intended.

15. Ms. Cheli has visited the Property on several occasions over the years her last visit to the Property occurred on or about December 16, 2025.  Ms. Cheli has visited the Property as a bone fide patron with the intent to avail herself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy.

16. Ms. Cheli has an affinity for both Outback and Carrabba's; each of these of these locations is the nearest of each, respectively. Ms. Cheli visited, and will continue to attempt to visit, the Property when in the surrounding area for the purposes of shopping in the Turnersville/Crosskeys area and running other errands. Her last visit to the Property occurred when she was in the area for the purposes of visiting the nearby NJ MVC location – the closest such full-service office to her residence and one to which she will have need to return in the future.

17. Ms. Cheli shall return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – she sincerely hopes that her return visits are not made in vain.

18. Ms. Cheli has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered her safety at the Property.

19. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Ms. Cheli has actual notice and reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendants.

20. Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers she has personally experienced which are listed in Paragraph 28 of this complaint.

21. Following any resolution of this matter Plaintiff will ensure that the Defendants undertake the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

23. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

24. Congress's objective was "the elimination or reduction of physical and social structures"

---

[4] 42 U.S.C. § 12101(a)(1)

that thwart "equal-citizenship stature for persons with disabilities."[5]

25. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

26. The Defendants have discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

27. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 28 are both technically feasible and readily achievable.

28. The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Property:

**Outback**

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces located at Outback contain slopes beyond the allowable limit (2%) and fail to provide a compliant accessible route from the parking area to the restaurant entrance and the accessible curb ramp; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Ms. Cheli with a tipping hazard and could also cause damage to her wheelchair; these

---

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)
[6] 42 U.S.C. § 12188(a)(1)

obstacles cannot be avoided as there are no other curb ramps existing at Outback.

b. The designated accessible parking area at Outback leads to an improper curb ramp which contains excessive sloping (greater than 8.3%) and protrudes the access aisles and parking spaces; a violation of the ADAAG and Sections 402, 406, 502 of the 2010 ADA Standards. When attempting to travel from the parking area to the entrance Ms. Cheli has been impeded by this curb ramp which endangers her safety, could cause damage to her wheelchair, and impedes the lowering of her van's accessible ramp.

c. The exterior accessible route throughout the Property is impeded by cross-sloping beyond allowable limits (2%) and abrupt changes in level greater than ¼" inch; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded by the excessive sloping and abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage her wheelchair.

d. The parking spaces adjacent to the exterior route at Outback lack curb stops, this enables parked vehicles to encroach upon the sidewalk and reduces the width of the path of travel (36" minimum); a violation of the ADAAG and Section 403 of the 2010 ADA Standards. Due to this policy failure Ms. Cheli's travel along the exterior route to the entrance becomes frustrating and present her with danger.

e. Outback fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Ms. Cheli has been forced to park away from the facility as detailed above so that she could freely access her vehicle.

f. The Property fails to provide a continuous accessible route which runs through the entirety

      of the Property and connects Outback to Carrabba's. Ms. Cheli cannot safely travel from restaurant to the other.

g. The Property fails to provide a compliant route to the adjacent street/sidewalk. Ms. Cheli has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits her options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

h. Outback provides interior service elements which are mounted beyond the allowable maximum height (34" AFF); in violation of the ADAAG and Section 308 of the 2010 ADA Standards. Due to their height or the presence of obstacles Ms. Cheli cannot make use of these elements (countertops, work surfaces, etc.).

i. Outback fails to provide the requisite amount of accessible dining tables/accessible seating (5% of total seating) and does not provide a lowered portion at the bar (less than 34" AFF); a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The lack of tables which allow for a forward approach prevents Ms. Cheli from dining comfortably in the dining room and the height of the bar prevent her from using it at all.

**Restrooms**

j. The restrooms within Outback are inaccessible to Ms. Cheli and contain architectural barriers to access including a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Ms. Cheli from freely using the restrooms.

k. The soap dispensers within the Outback restrooms are improperly mounted outside of the prescribed reach ranges; a violation of the ADAAG and Section 308 of the 2010 ADA

  Standards. Due to their improper locations Ms. Cheli cannot make use of these dispensers.

l. The use of restroom door when exiting the restroom at Outback is impeded by a lack of latch-side maneuvering clearance; a violation of the ADAAG and Section 404 of the 2010 ADA Standards. Due the lack of wheelchair maneuvering clearance, Ms. Cheli cannot exit the restroom without assistance and will be become trapped inside if left alone.

m. The Outback restrooms lack properly mounted grab bars, contain toilets with improper centerlines, and lack self-closing doors for the stalls; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to the foregoing barriers Ms. Cheli cannot make use of the restrooms.

### Carrabba's
**Parking and Exterior Accessible Route**

n. The designated accessible parking spaces located at Carrabba's contain slopes beyond the allowable limits (2.0%) and fail to provide a compliant accessible route from the parking area to the restaurant entrance or the lone accessible curb ramp; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Ms. Cheli with a tipping hazard and could also cause damage to her wheelchair; these obstacles cannot be avoided since there are no other curb ramps existing at Carrabba's.

o. The designated accessible parking area at Carrabba's either lead to an improper curb ramp which contains excessive sloping (greater than 8.3%) and protrudes the access aisles and the accessible parking spaces or simply to no curb ramp at all; a violation of the ADAAG and Sections 402, 406, 502 of the 2010 ADA Standards. When attempting to travel from the parking area to the entrance Ms. Cheli has been impeded by this curb ramp (or lack thereof) which endangers her safety, could cause damage to her wheelchair, and/or impedes

the lowering of her van's accessible ramp.

p. The exterior accessible route throughout Carrabba's is impeded by cross-sloping beyond allowable limits (2.0%) and abrupt changes in level greater than ¼" inch ; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded by the excessive sloping and abrupt changes of level – these conditions present a tipping hazard and could damage her wheelchair.

q. The parking spaces adjacent to the exterior route at Carrabba's lack curb stops, this enables parked vehicles to encroach upon the sidewalk and reduces the width of the path of travel (36" minimum); a violation of the ADAAG and Section 403 of the 2010 ADA Standards. Due to this policy failure Ms. Cheli's travel along the exterior route to the entrance becomes frustrating and present her with danger.

r. Carrabba's fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Ms. Cheli has been forced to park away from the facility as detailed above so that she could freely access her vehicle.

s. The Property fails to provide a continuous accessible route which runs through the entirety of the Property and connects Outback to Carrabba's. Ms. Cheli cannot safely travel from restaurant to the other.

t. The Property fails to provide a compliant route to the adjacent street/sidewalk. Ms. Cheli has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits her options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

    u. Carrabba's provides interior service elements which are mounted beyond the allowable maximum height (34" AFF); in violation of the ADAAG and Section 308 of the 2010 ADA Standards. Due to their height or the presence of obstacles Ms. Cheli cannot make use of these elements (countertops, work surfaces, etc.).

    v. Carrabba's fails to provide the requisite amount (5% of total seating in each area) of accessible dining tables/accessible seating (at both the interior and the exterior) and does not provide a lowered portion at the bar (less than 34" AFF); a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The lack of tables which allow for a forward approach prevents Ms. Cheli from dining comfortably in the dining room and the height of the bar prevent her from using it at all.

**Restrooms**

    w. The restrooms within Carrabba's are inaccessible to Ms. Cheli and contain architectural barriers to access including a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Ms. Cheli from freely using the restrooms.

    x. The soap and toilet dispensers (and changing table) within the Carrabba's restrooms are improperly mounted outside of the prescribed reach ranges; a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Ms. Cheli is unable to make use of these dispensers due their improper location.

    y. Lavatories within the Carrabba's restrooms completely lack knee clearance and accessibility; preventing Ms. Cheli from using the lavatories at all – violating the ADAAG and Section 606 of the 2010 ADA Standards.

z. The Carrabba's restrooms lack properly mounted grab bars, contain toilets with improper centerlines, and do not contain self-closing stall doors; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to the foregoing Ms. Cheli cannot make use of the restrooms.

29. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

30. The discriminatory violations described in Paragraph 28 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiff (and her expert) and include all those personally experienced by Ms. Cheli. Plaintiff requires thorough inspection of the Defendants' place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

31. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to her disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the

---

[7] 28 CFR § 36.104

architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[8]

32. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

33. Defendants have discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[9]

35. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[10]

36. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals

---

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them)

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)

[10] 42 U.S.C. § 12181(b)(2)(A)(ii)

because of the absence of auxiliary aids and services.[11]

37. If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[12] then the Defendants' facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

38. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

39. Pursuant to 28 CFR § 36.304(a) the Defendants shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

40. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

---

[11] 42 U.S.C. § 12181(b)(2)(A)(iii)
[12] as defined by 28 CFR § 36.401(a)(2)
[13] 28 CFR § 36.402(a)(2)

    b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

    c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

41. Plaintiff is not required to notify the Defendants of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

42. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

43. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

44. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure all violations of the ADA.[14]

---

[14] 42 U.S.C. § 12188(b)(2)

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendants to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendants to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of New Jersey Law  
Against Discrimination, N.J.S.A. 10:5-1 et seq.**

45. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

46. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[15]

48. As set forth above, the Defendants have violated the LAD by denying Ms. Cheli, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

  a. That this Court assume jurisdiction.
  b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.
  c. An injunction ordering Defendants to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.
  d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.
  e. An order requiring the Defendants to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.
  f. Other relief that this Court deems just and proper and is allowable under the LAD.

---

[15] Pursuant to N.J.S.A 10:5-4

Respectfully submitted on this 20th day of January 2026,

> */s/ Jon G. Shadinger Jr.*
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 2220 N. East Ave
> Vineland, NJ 08360
> (609) 319-5399
> js@shadingerlaw.com
> *Attorney for Plaintiff, Charlene Cheli*